## 23587. ROGERS *v.* SINCLAIR REFINING COMPANY.

Decided April 4, 1934.

*H. B. Moss,* for plaintiff.   *J. Richard Bowden,* for defendant.

GUERRY, J.  Plaintiff brought an action for fraud, alleging that the defendant company, through its agent, procured the lease of a certain filling station in Marietta from plaintiff at a rental value of one cent per gallon on all gasoline sold at that station; that such contract was procured through fraud, in that defendant's agent and alter ego first gained the confidence of plaintiff by patronizing her beauty parlor, having her to trim his hair and shave him, bringing his lady friends to her place of business and having their hair dressed and paying for the same himself, and in being profuse in his protestations of friendship to plaintiff, having her play the piano for him and his lady friends to dance, and giving to her a gold ring as a "token of profound friendship," and, during the patronage and protestation of friendship, incidentally suggesting to plaintiff that his company would give her double what she was getting from the Standard Oil Company for the rent of her filling station; the verbal trade between plaintiff and the said agent being that plaintiff was to get $100 per month for rent of her station; that he had shown such intimate friendship to her that when he wrote his book, "Life Psychology or The Art of Living," he brought her his manuscript to correct and criticise before he had it printed; that when the time arrived for the signing of the lease, he suggested to her that "he did not want the company to know that he made the suggestion that it was a much better contract to have 1 cent on the gallon than to have the $100 per month straight;" that the said agent had been in the oil and gas business and he knew which was the better of the two contracts; that since the signing of said contract defendant's agent immediately ceased his visits and attention, and that his representations that one cent per gallon would bring more revenue for the rent of said station than $100 per month have proved untrue, and plaintiff has never received more than $50 any one month. Damages are claimed as the difference between the amounts actually received each month and the sum of $100 per month. A general demurrer was sustained and plaintiff excepted.

In actions for fraud actionable representations "must relate to past, or existing facts and can not consist of mere broken prom-

ises, unfulfilled predictions, or erroneous conjectures as to future events." 26 C. J. 1087. "Mere 'puffing' does not constitute legal fraud, the same not being calculated to really mislead a purchaser, especially when he is afforded a full opportunity to form his own independent opinion as to the advisability of becoming a purchaser." *Terhune* v. *Coker*, 107 *Ga.* 352 (33 S. E. 394). The plaintiff in this case was the owner of the property and was already renting the place as a filling station. She was offered twice as much rent for it by the agent of the defendant and was then made the offer of one cent per gallon, which he stated *would* be a better contract than the $100 per month. She had an equal opportunity with the defendant to investigate what was being made by her then tenant and to form her own opinion. Necessarily what the station would earn was a matter of opinion or conjecture. It was not and could not be a statement in reference to an existing fact. The amount of gasoline to be sold was entirely problematical; it was a prediction as to what would be the earnings from the sale of gas in the future, and was contingent on too many events which might not happen, to be the basis for an action of fraud. In Johns *v.* Clother, 78 Wash. 602 (139 Pac. 755), it was held that a representation, made by the agent of a corporation in procuring a stock subscription, that the corporation was in a prosperous condition, and that the unpaid balances would never be called for, was a representation as to a future contingency, and was therefore insufficient to form the basis of a charge of fraud to support a defense that the subscription was invalid therefor. In *Thompson* v. *McLaughlin*, 13 *Ga. App.* 334 (79 S. E. 182), it was held that the statement by an insurance agent to a prospective customer and agent that he would help him write enough insurance to pay the premiums on the policy he bought, even where the agent had no intention of fulfilling his promise, was not fraud in law and would not serve as a basis of a defense that the notes signed for the premiums were obtained through fraud. Ordinarily, promises to perform some act in the future will not amount to fraud in legal acceptation, although subsequently broken without excuse. See, in this connection, *Coca-Cola Bottling Co.* v. *Anderson*, 13 *Ga. App.* 772 (80 S. E. 32) ; *Walker* v. *Story*, 14 *Ga. App.* 803 (82 S. E. 355).

The petition in this case alleges also that the agent suggested to

the plaintiff that he did not want his principal, the defendant, to know that he made the suggestion that the one-cent contract was the better contract. In *Gann* v. *Zettler,* 3 *Ga. App.* 589 (60 S. E. 283), it was said: "Whoso, having undertaken the service of his master, counsels with another and agrees also to serve him in those same things wherewith he has been trusted, can not claim the reward promised by his master, unless he makes it plain that he has not acted privily, but that his master was consenting thereto." Likewise, one who connives with an agent to take advantage of the trust reposed in him by the master may not hold the master responsible for such statements made by the agent which have deceived the promisee. See, in this connection, *Pursley* v. *Slahley,* 122 *Ga.* 362 (50 S. E. 139). One signing an instrument, if he can read, must read, or he will be bound by the terms and conditions stated therein unless his signature is procured through some scheme or trick or artifice by which he is deceived as to the contents or nature thereof. Fraud in such a case must be such fraud as prevents him from reading. *Stoddard Mfg. Co.* v. *Adams,* 122 *Ga.* 802 (50 S. E. 915). "Even where there has been misrepresentation of a past or existing fact, to form the basis of an action of deceit it is necessary that the complaining party should have also acted in reliance on the misrepresentation and the misrepresentation must have been of such nature and made under such circumstances that the injured party had a right to rely upon it. And misrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence. And where the representation consists of general commendations or mere expressions of opinion, hope, expectation, and the like, and where it relates to matters which from their nature, situation, or time, can not be supposed to be within the knowledge or under the power of the party making the statement, the party to whom it is made is not justified in relying upon it and assuming it to be true; he is bound to make inquiry and examination for himself so as to ascertain the truth." Pomeroy Eq. Jur. (3d ed.), § 891. The court did not err in sustaining the general demurrer and dismissing the petition.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*